IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JASON T. GUTOWSKI,                          No. C 12-6056 CW

     Plaintiff,                       ORDER GRANTING
                                            MOTION TO REMAND
   v.                                    AND AWARDING COSTS
                                            (Docket No. 17)
MCKESSON CORP. and ELI LILLY &
CO.,

     Defendants.
_____/

   Plaintiff Jason Gutowski moves to remand this action to state
court.  Defendant Eli Lilly & Company opposes the motion.  The
Court takes the matter under submission on the papers and grants
the motion.

BACKGROUND

   This is one of more than forty cases currently pending in
California state and federal courts alleging harm from the
ingestion of pharmaceutical drugs containing propoxyphene.  On
October 23, 2012, the plaintiffs in one of those pending actions
filed a petition with the California Judicial Council seeking to
coordinate all current and future cases raising similar claims.
See Cal. Civ. Proc. Code § 404.  The petition requested the
appointment of a "coordination motion judge" for the seven
propoxyphene cases that had been filed in California Superior
Court at that time "as well as other such cases that may be filed
before this Petition is decided."  Docket No. 1, Petition at 7.
As of this date, the Judicial Council has yet to decide the
coordination petition.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    On November 19, 2012, roughly one month after the

2  coordination petition was filed, Plaintiff brought this action in

3  Marin County Superior Court.  His complaint asserts that his

4  mother suffered fatal "cardiac injuries" in 2003 after taking a

5  propoxyphene-based drug manufactured by Defendant.  Docket No. 1,

6  Compl. at 2-3.  He is the only plaintiff named in this lawsuit and

7  has not asserted any class claims.

8    Defendant removed this action on November 29, 2012.  Docket

9  No. 1, Notice at 1-9.  In its notice of removal, it asserted that,

10 because this case is likely to be consolidated with the other

11 California propoxyphene cases, it is removable as part of a "mass

12 action" under the Class Action Fairness Act (CAFA), 28 U.S.C.

13 § 1332(d)(11).  Plaintiff filed a motion to remand on January 24,

14 2013.

15                        LEGAL STANDARD

16    A defendant may remove a civil action filed in state court to

17 federal district court so long as the district court could have

18 exercised original jurisdiction over the matter.  28 U.S.C.

19 § 1441(a).  Title 28 U.S.C. § 1447(c) provides that if, at any

20 time before judgment, it appears that the district court lacks

21 subject matter jurisdiction over a case previously removed from

22 state court, the case must be remanded.  On a motion to remand,

23 the scope of the removal statute must be strictly construed.  Gaus

24 v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong

25 presumption' against removal jurisdiction means that the defendant

26 always has the burden of establishing that removal is proper."

27 Id.; see also Wash. State v. Chimei Innolux Corp., 659 F.3d 842,

28 847 (9th Cir. 2011) ("The burden of establishing removal

2

jurisdiction, even in CAFA cases, lies with the defendant seeking removal.")).  Courts should resolve doubts as to removability in favor of remanding the case to state court.  <u>Gaus</u>, 980 F.2d at 566.

DISCUSSION

CAFA gives federal courts jurisdiction over any "mass action" in which (1) the amount in controversy exceeds five million dollars; (2) at least one plaintiff is diverse from one defendant; and (3) at least one plaintiff's claim exceeds seventy-five thousand dollars.  28 U.S.C. § 1332(d); <u>Abrego v. Dow Chem. Co.</u>, 443 F.3d 676, 689 (9th Cir. 2006).  At issue here is the scope of the term "mass action."

Under CAFA, "mass action" is defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11).  Defendant contends that the present case satisfies this definition because it is likely to be coordinated with the other propoxyphene lawsuits currently pending in California state courts.  Once that coordination occurs, Defendant argues, the total number of plaintiffs in all of the propoxyphene cases will exceed one hundred and thus satisfy CAFA's "mass action" definition.

Defendant's argument fails for two reasons.  First, the October 2012 coordination petition does not propose a joint trial and, thus, cannot satisfy CAFA's "mass action" definition. Second, even if it did propose a joint trial, removal is still premature because the petition remains pending and Plaintiff has

3

not attempted to coordinate this case with the other propoxyphene actions.

I.   Mass Actions Must Be "Tried Jointly" Under CAFA

Two courts in this district have expressly rejected Defendant's argument that the October 2012 coordination petition renders all of the pending propoxyphene cases part of a single "mass action." Posey v. McKesson Corp., 2013 WL 361168, at *2-*3 (N.D. Cal.), appeal docketed [no case number assigned] (9th Cir. Feb. 7, 2013); Rice v. McKesson Corp., 2013 WL 97738, at *2 (N.D. Cal.), appeal docketed No. 13-80007 (9th Cir. Jan. 28, 2013); see also L.B.F.R. v. Eli Lilly & Co., Case No. 12-10025-ODW, Docket No. 8, Remand Order, at 3 (C.D. Cal. Dec. 6, 2012) ("Despite Defendants' [sic] obtuse reasoning concerning a pending state court motion for the coordination of cases, this case does not yet involve 100 or more plaintiffs."). Both courts in this district reasoned that, because the "'petition for coordination . . . is bereft of any explicit proposal that the claims of these plaintiffs be tried jointly,'" as required by CAFA, the cases do not constitute a "mass action." Posey, 2013 WL 361168, at *2 (quoting Rice, 2013 WL 97738, at *2) (emphasis in original).

Despite these rulings, Defendant contends that the coordination petition does, in fact, propose a joint trial. It relies on In re Abbott Labs., Inc., 698 F.3d 568, 571-72 (7th Cir. 2012), for support. There, the Seventh Circuit reversed a district court's order remanding a case to state court because the plaintiffs had moved to consolidate their case with ten similar actions involving several hundred plaintiffs. Id. The court held that the motion to consolidate proposed a joint trial, thus making

United States District Court
For the Northern District of California

4

it removable under CAFA.  Id.  The court highlighted language in the motion requesting consolidation "through trial" and "not solely for pretrial proceedings."  Id. at 571.  Defendant here contends that the petition to coordinate the propoxyphene cases similarly proposes a joint trial because it seeks coordination "for all purposes."  Docket No. 1, Petition at 8.

Defendant's reliance on Abbott Labs is unavailing.  The decision is not binding on this Court and, even if it was, it is inapposite.  As the courts in Rice and Posey each noted, the October 2012 coordination petition does not propose or even refer to a joint trial.  It focuses, instead, on the potential benefits of coordination during pretrial proceedings, noting that coordination would avoid "duplicative discovery" and protect "judicial resources."  Docket No. 1, Petition at 6.  Furthermore, the petition's use of the phrase "for all purposes" appears simply to reflect the language of California's coordination statute; it is not a proposal for joint trial.  See Cal. Civ. Proc. Code § 404.1 ("Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice . . . ." (emphasis added)).  Abbott Labs thus offers little guidance here.

In contrast, the Ninth Circuit's decision in Tanoh v. Dow Chemical Co., 561 F.3d 945, 954 (9th Cir. 2009), does provide some direction.  In Tanoh, the court considered "whether seven individual state court actions, each with fewer than one hundred plaintiffs, should be treated as one 'mass action' eligible for removal to federal court under the Class Action Fairness Act."

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Id. at 945.  The court held that the seven actions were not

2   removable under CAFA, reasoning that the statute's "mass action"

3   provision was "fairly narrow" in scope.  Id. at 953.

4       In reaching this conclusion, the Tanoh court relied on

5   another CAFA provision, which expressly excludes from the

6   definition of "mass action" cases that "have been consolidated or

7   coordinated solely for pretrial proceedings."  Id. at 954 (citing

8   28 U.S.C. § 1332(d)(11)(B)(ii)(IV)).  This provision, the court

9   explained, "reinforces our conclusion that Congress intended to

10  limit the numerosity component of mass actions quite severely by

11  including only actions in which the trial itself would address the

12  claims of at least one hundred plaintiffs."  Id. (emphasis added).

13  Although there was no coordination petition pending in Tanoh, the

14  Ninth Circuit's narrow interpretation of the "mass action"

15  provision still counsels in favor of remand here.  See Rice, 2013

16  WL 97738, at *2 ("Construing plaintiffs' petition for coordination

17  as the functional equivalent of an express request for a joint

18  trial would conflict with both the guidance proved by our court of

19  appeals in Tanoh, as well as with the general canon of strict

20  construction of removal statues.");  Posey, 2013 WL 361168, at *3

21  (same) (quoting Rice, 2013 WL 97738, at *2).

22      Defendant's final argument against remand, which was not

23  raised in Rice or Posey, is that CAFA's legislative history

24  reveals Congress's intent to give federal courts jurisdiction over

25  cases like this one.  For support, Defendant cites a handful of

26  statements made during House floor debates about CAFA's general

27  purpose.  None of these statements, however, specifically

28  addresses the scope of CAFA's "mass action" provision.  The

6

legislative proceedings that do address this provision suggest, if anything, that Congress actually intended to exclude consolidated mass tort cases -- such as the present case -- from the definition of "mass action."  During one Senate debate, for instance, Senator Trent Lott, a co-sponsor of the bill, responded specifically to concerns that consolidated mass tort cases might be removed as "mass actions" under CAFA.  He made clear:

> Mass torts and mass actions are not the same.  The phrase "mass torts" refers to a situation in which many persons are injured by the same underlying cause, such as a single explosion, a series of events, or exposure to a particular product.  In contrast, the phrase "mass action" refers to a specific type of lawsuit in which a large number of plaintiffs seek to have all their claims adjudicated in one combined trial.

151 Cong. Rec. S1076-01, 2005 WL 292034 (daily ed. Feb. 8, 2005).  Representative Bob Goodlatte, who helped author the legislation, expanded on this distinction.  In his comments on the final bill, he stated that CAFA "will have absolutely no effect" on a group of then-pending lawsuits filed in New Jersey state courts against the prescription drug manufacturer, Merck.  As he explained,

> the majority of personal injury cases brought against Merck are individual cases that would not be affected by the bill in any manner whatsoever.  These include more than 400 personal injury cases that are part of a coordinated proceeding in New Jersey State court.  None of these cases will be affected by the bill because they are neither class actions nor mass actions.

151 Cong Rec. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (emphasis added); see also id. ("[N]ot a single Vioxx case has been brought against Merck in State court by more than 100 plaintiffs, one of the requirements for removal to Federal Court under the class action legislation.  Thus, there is no reason to believe that the mass action provision would affect any Vioxx-

7

related cases whatsoever."). Thus, according to one of CAFA's principal drafters, individual lawsuits do not become removable simply because they have been coordinated with other lawsuits in state court. CAFA's legislative history, therefore, does not support Defendant's reading of the "mass action" provision.

Nevertheless, while removal is premature at this stage, this action may become removable in the future if Plaintiff seeks to coordinate this case with other propoxyphene cases <u>for trial</u> at some later date. <u>Tanoh</u>, 561 F.3d at 956. Until then, however, this Court lacks subject matter jurisdiction over the case.

II. Plaintiff Did Not Seek Coordination

Even if coordinated cases constituted a "mass action" under CAFA, removal would still be premature at this stage because none of the propoxyphene cases have actually been coordinated. The coordination petition remains pending before the Judicial Council and Plaintiff has not made any independent effort to join that petition. Indeed, none of his filings in state court or in this Court indicates that he wishes to coordinate this case with any other case.

Nevertheless, Defendant contends that Plaintiff's counsel "tacitly approved" of coordination here "by not objecting" to a statement made in an e-mail that Plaintiff's counsel received the day after Plaintiff filed his complaint. Opp. 2. The e-mail was sent to Defendant's counsel by Matthew Sill -- one of the attorneys who filed the coordination petition -- and merely confirms that his petition sought to include later-filed cases such as this one. Declaration of Rachel B. Passaretti-Wu, Ex. 1. Although Sill does not represent Plaintiff here, Defendant argues

that "there is a strong basis in fact to impute Mr. Sill's statements (and therefore the Coordination Petition) to Plaintiff's attorney" because Plaintiff's attorney was copied on Sill's e-mail. Opp. 2.

This argument is unpersuasive. Defendant has failed to identify a single <u>affirmative</u> step that Plaintiff has taken to coordinate this case with the other propxyphene cases. His attorney's failure to respond to Sill's e-mail -- an e-mail from a non-party -- to Defendant's counsel cannot plausibly be read as such a step. Moreover, Plaintiff's attorney was one of five attorneys who were copied on Sill's e-mail. Passaretti-Wu Decl., Ex. 1. All of these attorneys serve as Sill's co-counsel in another case -- a multidistrict action currently pending against Defendant in the Eastern District of Kentucky. Thus, Plaintiff's attorney was likely copied on Sill's e-mail because he is working with Sill in the multidistrict action, not because he represents Plaintiff in the present case. Under these circumstances, it would be particularly unreasonable to impute his failure to respond to the e-mail as an affirmative expression of his client's intentions in this case.

III. Attorney's Fees

Plaintiff seeks an order compelling Defendants to reimburse him for his attorney's fees and costs incurred in seeking to remand this case. Title 28 U.S.C. § 1447(c) allows courts to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." According to the Supreme Court, the "standard for awarding fees should turn on the reasonableness of the removal." <u>Martin v. Franklin Capital</u>

United States District Court
For the Northern District of California

1  Corp., 546 U.S. 132, 141 (2005).  "Absent unusual circumstances,

2  courts may award attorney's fees . . . only where the removing

3  party lacked an objectively reasonable basis for seeking removal."

4  Id.

5       Here, Defendant lacks an "objectively reasonable basis" for

6  seeking removal.  The Judicial Council has not yet decided whether

7  to coordinate the seven original propoxyphene cases filed in

8  California, let alone later-filed actions such as this one.

9  Defendant should have recognized that this fact would preclude

10  removal.  Indeed, by the time Defendant filed its opposition here,

11  three other district courts had already held that it was premature

12  to remove any propoxyphene case while the coordination petition

13  remains pending.  Rice, 2013 WL 97738, at *3; Posey, 2013 WL

14  361168, at *3; L.B.F.R., Case No. 12-10025-ODW, Docket No. 8, at

15  3.  Plaintiff himself has not made any effort to coordinate this

16  case; Defendant's assertion that Plaintiff's counsel consented to

17  coordination "by not objecting" to an e-mail addressed to a non-

18  party is untenable for reasons outlined above.  In sum, even if

19  Defendant's interpretation of CAFA's "mass action" provision

20  presented a close legal question, Defendant still lacked a

21  reasonable basis for seeking to remove this case when it did.

22  Accordingly, Plaintiff's request for fees and costs is granted.

23       In this circuit, courts calculate an award of attorneys' fees

24  using the lodestar method, whereby the court multiplies "the

25  number of hours the prevailing party reasonably expended on the

26  litigation by a reasonable hourly rate."  Camacho v. Bridgeport

27  Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).  The party seeking

28  an award of attorney's fees bears the burden of producing

10

1   "satisfactory evidence -- in addition to the attorney's own

2   affidavits -- that the requested rates are in line with those

3   prevailing in the community for similar services by lawyers of

4   reasonably comparable skill, experience and reputation." Id. at

5   980.  In the present case, Plaintiff failed to produce any billing

6   records, affidavits, or other documentation supporting his motion

7   for fees and costs.

8        Thus, within seven days of this order, Plaintiff may submit a

9   supplemental brief, not to exceed three pages, with supporting

10  documentation to address his request for fees and costs.

11  Defendant may oppose the request in a brief, not to exceed three

12  pages, which shall be submitted no more than seven days after

13  Plaintiff files his brief.  Plaintiff may file a two-page reply

14  within two days of Defendant's opposition.  The matter will be

15  decided on the papers.

16                              CONCLUSION

17       For the reasons set forth above, Plaintiff's motion to remand

18  (Docket No. 17) is GRANTED.  The Clerk shall vacate all future

19  dates and remand this case to Marin County Superior Court.

20       Plaintiff's motion for attorney's fees and costs is GRANTED.

21  The Court will determine the amount of the award based on the

22  parties' supplemental briefing.

23       IT IS SO ORDERED.

24

25  Dated: February 25, 2013            CLAUDIA WILKEN
                                        United States District Judge
26

27

28

11